IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JOHN ANDREW WYATT,
          Plaintiff,

v.                                       Civil Action No. 3:23cv875

OFFICER TREVOR HOLMES,
          Defendant.

## OPINION

This matter comes before the Court on a motion for summary judgment filed by the defendant, Trevor Holmes, a police officer with the Henrico County Police Division ("HCPD"). (ECF No. 26.) On January 29, 2022, Holmes arrested the plaintiff, John Andrew Wyatt, on suspicion of driving under the influence ("DUI"), in violation of Virginia Code Section 18.2-266. Holmes's field assessment of Wyatt indicated potential intoxication, but testing later revealed that Wyatt had neither alcohol nor drugs in his system. Wyatt then brought this action against Holmes, raising two Fourth Amendment claims under 42 U.S.C. § 1983 for unlawful seizure and malicious prosecution, and three state law claims for battery, false imprisonment, and malicious prosecution.

Because the undisputed evidence establishes that Holmes had probable cause to arrest Wyatt and bring him before a magistrate on suspicion of DUI, Wyatt cannot prevail on any of his claims. Qualified immunity also bars Wyatt's Section 1983 claims against Holmes. The Court, therefore, will grant Holmes's motion for summary judgment. (ECF No. 26.)

### I. BACKGROUND

#### A. *Initial Interaction*

On January 29, 2022, Holmes and other HCPD officers were working in an off-duty capacity directing traffic for a sporting event at the University of Richmond. (ECF No. 26-2 ¶ 6.)

Around 6:50 p.m., Sergeant Michael Sommerville radioed that Wyatt nearly struck him with his car and that Wyatt was headed in Holmes's direction. (*Id.* ¶ 8.) Holmes located Wyatt's car, noticed that the car's registration sticker had expired, and pulled Wyatt over.[1] (*Id.* ¶ 9.)

When Holmes approached Wyatt's car, another officer yelled out that he saw an open container on the passenger side of the vehicle. (ECF No. 26-17, at 2022-10-29, T23:51:38Z.) Wyatt stated that the beer bottle belonged to his former passenger but admitted that he had drunk one beer himself. (*Id.* at 2022-10-29, T23:51:43Z.) Holmes then stepped away from the car. (*Id.* at 2022-10-29, T23:51:52Z.) At this point, Sommerville told Holmes that Wyatt nearly ran him over and that he did not think Wyatt saw him directing traffic. (*Id.* at 2022-10-29, T23:51:56Z.) Holmes replied, "I think he might be drunk." (*Id.* at 2022-01-29, T23:52:01Z.)

Holmes then told Wyatt to turn his car off. (*Id.* at 2022-01-29, T23:52:15Z.) Holmes again asked Wyatt how much he had to drink. (*Id.* at 2022-01-29, T23:52:30Z.) Wyatt twice stated that he had one beer earlier in the day. (*Id.*) Wyatt also maintained that the open beer bottle belonged to his friend. (*Id.* at 2022-01-29, T23:52:44Z.)

### B. *In-Car Intoxication Tests*

With Wyatt still in the car, Holmes began conducting a field intoxication investigation. (*Id.* at 2022-01-29, T23:53:06Z.) Holmes first asked Wyatt to recite the alphabet from E to R. (*Id.*) Wyatt made it to the letter P but then stopped and started laughing. (*Id.* at 2022-01-29, T23:53:12Z.) Wyatt asked if he could "do it from the beginning," but Holmes declined to allow him to do so. (*Id.* at 2022-01-29, T23:53:18Z.) Holmes then asked Wyatt to count down from 75 to 62, which Wyatt did with no problems. (*Id.* at 2022-01-29, T23:53:21Z.) Holmes lastly directed

---

[1] The parties dispute whether Holmes also saw Wyatt's car swerve in the road.

Wyatt to perform a finger dexterity test three times.[2] (*Id.* at 2022-01-29, T23:53:44Z.) After Wyatt properly performed the test once, he asked Holmes if he had done the test correctly. (*Id.* at 2022-01-29, T23:54:13Z.) Holmes replied, "Just like I showed you." (*Id.* at 2022-01-29, T23:54:17Z.) Wyatt again performed the test, but this time incorrectly. (*Id.* at 2022-01-29, T23:54:23Z.) He also did not perform the test a third time as Holmes had instructed. (*Id.*)

### C. *Out-of-Car Intoxication Tests*

#### 1. *Nystagmus Tests*

Holmes next asked Wyatt to step out of his car. (*Id.* at 2022-01-29, T23:54:33Z.) After Holmes repeatedly told Wyatt where to stand and which direction to face, Wyatt stated that he was nervous. (*Id.* at 2022-01-29, T23:54:45Z.) Holmes then tested Wyatt for nystagmus, an eye condition that may indicate that a person has been drinking. (*Id.* at 2022-01-29, T23:55:12Z.) Although the nystagmus tests came back negative, Holmes asserts that Wyatt smelled of alcohol and that his eyes appeared bloodshot and glassy during this interaction.[3] (ECF No. 26-2, at 17.) He accordingly asked Wyatt whether he had taken any drugs, prescription or otherwise. (ECF No. 26-17, at 2022-01-29, T23:57:28Z.) Wyatt replied that he takes high blood pressure medication. (*Id.* at 2022-01-29, T23:57:32Z.)

#### 2. *Walk-and-Turn Test*

From there, Holmes asked Wyatt to perform the walk-and-turn test. (*Id.* at 2022-01-29, T23:57:38Z.) This involves taking nine heel-to-toe steps in a straight line, with one's arms at his

---

[2] This test involves sequentially touching each of one's fingers to his thumb, while counting from one to four, and then doing the same in reverse.

[3] Wyatt disputes that he smelled of alcohol or had bloodshot and glassy eyes. The body camera footage shows some instances where Wyatt's eyes appear bloodshot, but others where they appear white.

3

side, while counting each step out loud. (*Id.* at 2022-01-29, T23:57:55Z.) The suspect must then perform a turn in place by taking a series of small steps and take nine heel-to-toe steps back to the original starting spot, while continuing to count out loud. (*Id.* at 2022-01-29, T23:58:05Z.) The test can provide eight clues of intoxication. (ECF No. 26-2 ¶ 25.)

One clue arises when the suspect falls out of the instructional stance. (*Id.* ¶ 22.) In this case, the instructional stance required Wyatt to stand in place with his right heel in front of his left toe. (*Id.*) Holmes asserts that Wyatt fell out of this stance as he instructed Wyatt how to perform the test. (*Id.*) Wyatt states that he does not remember whether he fell out of the instructional stance, but that if he did, it was due to his nervousness and the cold weather. (ECF No. 26-16, at 16.) The body camera footage does not capture whether Wyatt fell out of the stance. (ECF No. 26-2 ¶ 22.)

Another clue arises when the suspect takes a wider turn than instructed. (ECF No. 26-2 ¶ 24.) Although Holmes instructed Wyatt to take a series of small steps when turning, (ECF No. 26-17, at 2022-01-29, T23:58:05Z), Wyatt instead placed his right foot in front of and across his left foot in one sweeping turn, (*id.* at 2022-01-29, T23:59:16Z). As he did so, Wyatt's feet were never more than shoulder width apart. (*Id.*)

### 3. *One-Leg-Stand Test*

Holmes next asked Wyatt to perform the one-leg-stand test. (ECF No. 26-2 ¶ 26.) This test involves holding one's foot out six inches off the ground as he stands on his other leg. (*Id.*) The test can provide four clues of intoxication: swaying, hopping, letting one's foot touch the ground, and using one's arms for balance. (*Id.* ¶ 28.) Wyatt demonstrated three such clues. (*Id.* ¶ 27.) Almost immediately upon starting the test, Wyatt's right foot touched the ground, and he swung his left arm out to balance himself. (ECF No. 26-17, at 2022-01-30, T00:00:39Z.) Over

4

the course of the next 30 seconds, Wyatt swayed and continued to hold his left arm out for balance. (*Id.*)

At the end of the test, Holmes again asked Wyatt about the amount he drank. (*Id.* at 2022-01-30, T00:01:15Z.) This time, Wyatt stated that he had drunk two beers. (*Id.* at 2022-01-30, T00:01:18Z.) Holmes then offered a breathalyzer test, which Wyatt declined to take. (*Id.* at 2022-01-30, T00:01:45Z.) Holmes asked Wyatt if he took anything else that day, and Wyatt again answered in the negative. (*Id.* at 2022-01-30, T00:03:01Z.) Holmes then arrested Wyatt on the suspicion of DUI. (*Id.* at 2022-01-30, T00:03:30Z.)

### D. *Post-Arrest Questioning and Testing*

As he drove Wyatt to jail, Holmes read Wyatt his *Miranda* rights. (*Id.* at 2022-01-30, T00:09:34Z.) Holmes stated that he believed Wyatt was impaired based on Wyatt's performance on the field intoxication tests. (*Id.* at 2022-01-30, T00:09:55Z.) In response, Wyatt stated that he was nervous when performing the tests, which affected his balance and recall. (*Id.* at 2022-01-30, T00:10:23Z.) Wyatt assured Holmes that he did not have a lot to drink. (*Id.* at 2022-01-30, T00:10:40Z.) When Holmes asked Wyatt if he had taken anything else, Wyatt stated that he had not. (*Id.* at 2022-01-30, T00:10:48Z.) But Wyatt did admit, "I've made a lot of mistakes tonight. I see that." (*Id.* at 2022-01-30, T00:14:44Z.)

At the police station, Holmes opined that he did not think that Wyatt's blood alcohol content ("BAC") was "terribly high," but he did believe that it was "high enough for [Wyatt] to be impaired based on the driving behavior and the performance on the tests." (*Id.* at 2022-01-30, T00:27:26Z.) Holmes again asked Wyatt how many beers he drank. (*Id.* at 2022-01-30, T00:37:14Z.) Wyatt changed his story for a second time, now stating that he drank three beers. (*Id.*) Holmes again explained that he arrested Wyatt because Wyatt smelled of alcohol, had

5

bloodshot and watery eyes, slurred his words, performed poorly on the tests, had an open container in his car, and almost struck Sommerville. (*Id.* at 2022-01-30, T00:52:59Z, T00:57:01Z.)

Wyatt then took an Intoxilyzer test, which showed that he had a BAC of 0.00. (*Id.* at 2022-01-30, T01:12:26Z, T01:16:13Z.) This result eliminated alcohol as a potential source of impairment. (ECF No. 26-2 ¶ 39.) Still, the signs of intoxication that Holmes had observed earlier led him to believe that Wyatt was under the influence of a different substance. (ECF No. 26-2 ¶ 40.) He accordingly took Wyatt to a nearby hospital and had his blood drawn. (*Id.*) Because the test results would not be available for months, Holmes could not immediately determine whether Wyatt had another substance in his system. (ECF No. 26-20 ¶ 2.)

Before releasing Wyatt, Holmes took Wyatt before a magistrate, who would determine whether probable cause existed for the arrest. (ECF No. 26-18, at 33.) Holmes shared the relevant facts—including Sommerville's report about Wyatt's driving, Wyatt's bloodshot and watery eyes, the open container in Wyatt's car, Wyatt's poor testing performance, and the Intoxilyzer test results—with the magistrate. (ECF No. 26-2 ¶ 43.) Based on this information, the magistrate determined that probable cause existed to arrest Wyatt for violating Virginia Code Section 18.2-266. (ECF No. 26-14.)

Four months later, Wyatt's blood test results came back negative. (ECF No. 26-20 ¶ 2.) The Commonwealth accordingly dropped its DUI charge against Wyatt. (*Id.*)

## II. STANDARD OF REVIEW

A court may award summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it might affect the outcome of the suit under the governing law. A dispute is genuine if a reasonable jury could return a verdict for the non-moving party." *Knibbs*

*v. Momphard*, 30 F.4th 200, 213 (4th Cir. 2022) (internal citations and quotation marks omitted). Courts must view the facts and draw all reasonable inferences therefrom in the light most favorable to the non-moving party. *Meyers v. Balt. Cnty., Md.*, 713 F.3d 723, 730 (4th Cir. 2013).

### III. ANALYSIS

#### A. *Wyatt's Claims*

##### 1. *Initial Seizure-Related Claims*

Wyatt brings three claims against Holmes that relate to the initial seizure: a Fourth Amendment claim under Section 1983 for unlawful seizure, and two state law claims for battery and false imprisonment. To prevail on any of these claims, Wyatt must make a threshold showing that Holmes lacked probable cause to arrest him. *See Hupp v. Cook*, 931 F.3d 307, 318 (4th Cir. 2019) ("A seizure is unreasonable under the Fourth Amendment if it is not based on probable cause."); *Ware v. James City Cnty., Va.*, 652 F. Supp. 2d 693, 712 (E.D. Va. 2009) (granting summary judgment for arresting officer on plaintiff's Virginia battery claim because the officer had probable cause to arrest the plaintiff); *DeChene v. Smallwood*, 311 S.E.2d 749, 751 (Va. 1984) (explaining that a plaintiff must show a lack of probable cause to prevail on a state false imprisonment claim).

Courts look at the totality of the circumstances when determining whether probable cause exists. *See Hupp*, 931 F.3d at 318. This involves not only "look[ing] to the information available to the officer on the scene at the time," but also "apply[ing] an objective test to determine whether a reasonably prudent officer with that information would have thought that probable cause existed for the arrest." *Id.* Ultimately, "[t]he inquiry 'turns on two factors: the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct.'" *Id.* (quoting *Smith v. Munday*, 848 F.3d 248, 253 (4th Cir. 2017)) (internal quotation marks omitted).

7

Numerous factors may lead a police officer to believe that a driver is impaired. These include the presence of an open container, erratic driving, failed sobriety tests, and admissions of drinking, among others.[4] The Court views these factors as a whole when evaluating whether an officer had probable cause to arrest someone for violating Virginia Code Section 18.2-266. *See Hupp*, 931 F.3d at 318.

Holmes based his probable cause determination on several pieces of disputed evidence. For example, he claims to have witnessed Wyatt's car swerve in the road before pulling him over. Wyatt disputes that this occurred, and the Court does not have any video evidence to confirm whether this, in fact, happened. Holmes also asserts that Wyatt had bloodshot and glassy eyes. While the video footage shows this to be true at some points during the interaction, at other points Wyatt's eyes look normal. Wyatt also disputes that he smelled of alcohol and that he failed the walk-and-turn test—neither of which Holmes's body camera footage can resolve.[5]

---

[4] *See, e.g., Robbins v. Commonwealth*, No. 0482–13–1, 2014 WL 1910339, at *6 (Va. Ct. App. May 13, 2024) (finding probable cause where the driver indisputably smelled of alcohol, had bloodshot and glassy eyes, slurred his speech, admitted to drinking earlier in the day, and failed several field sobriety tests); *Jones v. Commonwealth*, 688 S.E.2d 269, 273 (Va. 2010) (finding probable cause in part because the driver refused to perform field sobriety tests); *Wohlford v. Commonwealth*, 351 S.E.2d 47, 49 (Va. Ct. App. 1986) ("The moderate smell of alcohol, the manner in which the vehicle was operated, and the admission of consumption of alcohol provided probable cause for the arrest."); *see also United States v. Mitchell*, No. 3:23cr39, 2023 WL 4765582, at *6 (E.D. Va. July 26, 2023) (finding probable cause to conduct a vehicle search based on "alcohol-related evidence," which included the officer's observation that the driver drove erratically, admitted to drinking earlier, and had an open bottle in the car); *United States v. Washington*, 439 F. Supp. 589, 596 (E.D. Va. 2006) (explaining that reasonable suspicion existed as soon as the officer noticed an open container inside the car); *Hargrove v. Commonwealth*, No. 3059–99–2, 2000 WL 1527950, at *2 (Va. Ct. App. Oct. 17, 2000) (same); *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) ("Nervous, evasive behavior is another pertinent factor in determining reasonable suspicion.").

[5] Holmes asserts that Wyatt failed the walk-and-turn test based on two clues: (1) falling out of the instructional stance, and (2) making a wider turn than instructed. Holmes's body camera footage does not capture whether Wyatt fell out of the instructional stance, and Wyatt cannot remember if it happened. (ECF No. 26-16, at 16.) And while Holmes did not take a series of small

But even if the Court views this evidence in Wyatt's favor—as it must—the undisputed evidence sufficiently supports a finding of probable cause. Almost immediately upon engaging Wyatt, Holmes received an alert from a fellow officer that Wyatt had an open beer bottle in his car. This factor alone gives rise to reasonable suspicion. *See Washington*, 439 F. Supp. at 596. And by the time Holmes engaged Wyatt, he had received a report that Wyatt had nearly struck Sommerville with his car. This only furthered Holmes's suspicion that Wyatt had violated Virginia's DUI law.[6] *See Wohlford*, 351 S.E.2d at 49.

Wyatt's conduct from there sealed Holmes's probable cause determination. Although the nystagmus test did not indicate signs of alcohol impairment, Holmes failed several other field sobriety tests, including the alphabet test, the finger dexterity test, and the one-leg-stand test. *See Robbins*, 2014 WL 1910339, at *6. Wyatt also admitted to drinking alcohol earlier in the day and changed his story about the amount he drank. *See id.* And while Wyatt may have had innocent reasons for exhibiting nervousness and declining a breathalyzer test, Holmes was entitled to consider these factors as part of his arrest calculus.[7] *See Wardlow*, 528 U.S. at 124.

Based on the totality of the undisputed evidence—including the open beer bottle, the report of poor driving, the results of the field sobriety tests, Wyatt's admission to drinking earlier, and

---

steps when turning, as Holmes had instructed, his feet were no more than shoulder width apart as he turned. (ECF No. 26-17, at 2022-01-29, T23:59:16Z).

[6] Wyatt disputes that he nearly struck Sommerville. For probable cause purposes, the question is not whether he actually almost hit Sommerville, but whether Holmes believed that Wyatt almost did so based on Sommerville's report. *See Hupp*, 931 F.3d at 318 (probable cause depends on "the suspect's conduct *as known to the officer*" (emphasis added)).

[7] Wyatt's own expert testified that Holmes could consider Wyatt's nervousness in evaluating whether probable cause existed to arrest Wyatt. Wyatt argues that his expert's testimony is "immaterial" because he does not intend to call the expert at trial. But Wyatt cites to no legal authority to support this argument, and Federal Rule of Civil Procedure 56(c) requires the Court to consider the expert's testimony in deciding Holmes's motion.

9

his changing story about the amount he drank—no reasonable jury could find that Holmes lacked probable cause to arrest Wyatt for suspicion of DUI. Thus, Wyatt cannot prevail on his Fourth Amendment unlawful seizure claim or his state law battery and false imprisonment claims.

### 2. *Malicious Prosecution Claims*

Wyatt also asserts that, notwithstanding the signs of impairment collected in the field, no probable cause existed to prosecute him after the Intoxilyzer test showed that he had a BAC of 0.00. Wyatt accordingly brings two malicious prosecution claims, one under Section 1983 and the other under Virginia law. As before, Wyatt must show that Holmes lacked probable cause to prevail on either of these claims. *See Smith*, 848 F.3d at 253 (explaining that a Fourth Amendment malicious prosecution claim requires a showing that the officer seized the plaintiff "pursuant to legal process that was not supported by probable cause" (quoting *Massey v. Ojaniit*, 759 F.3d 343, 356 (4th Cir. 2014)); *Reilly v. Shepherd*, 643 S.E.2d 216, 218 (Va. 2007) (identifying a lack of probable cause as one of four elements for proving a state malicious prosecution claim).

Courts must afford "great deference to a magistrate judge's determination of probable cause." *Smith*, 848 F.3d at 254. But even when a magistrate finds probable cause, officers may still face liability for malicious prosecution where they fail to conduct an individualized investigation. *See id.* Officers also face potential liability where they have lied or made misleading statements that result in criminal charges against the plaintiff. *See Massey*, 759 F.3d at 357.

These concerns do not arise here. Holmes conducted a thorough investigation before making his probable cause determination, including asking Wyatt whether he drank alcohol earlier in the day and conducting several field sobriety tests. Holmes also shared with the magistrate other undisputed facts that led to his probable cause determination, including Sommerville's report of Wyatt's poor driving, the open container inside of Wyatt's car, and Wyatt's changing stories. And

10

although Holmes knew that Wyatt had a BAC of 0.00 by the time Holmes brought Wyatt before the magistrate, Holmes shared this information with the magistrate and also truthfully told the magistrate that Wyatt's drug test results were still pending. Based on the totality of these factors, the magistrate determined that probable cause existed. The Court finds no fault in this decision based on the undisputed facts in the record, so Wyatt's malicious prosecution claims fail.[8]

### B. *Qualified Immunity on Section 1983 Claims*

Even if Holmes lacked probable cause, qualified immunity still bars Wyatt's Fourth Amendment unreasonable seizure and malicious prosecution claims. "[O]fficers are entitled to qualified immunity under Section 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). "'Clearly established' means that, at the time of the officer's conduct, the law was 'sufficiently clear that every reasonable official would understand that what he is doing' is unlawful." *Id.* at 63 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)) (internal quotation marks omitted). "In other words, existing law must have placed the constitutionality of the officer's conduct 'beyond debate.'" *Id.* (quoting *al-Kidd*, 563 U.S. at 741). "This demanding

---

[8] Wyatt also asserts that Holmes may have had an improper motive to arrest him so he could extend his off-duty time and receive extra pay. Where an officer has "'no good reason to believe' that criminal charges were 'justified by the facts and the law,'" a malicious prosecution claim may succeed. *Thompson v. Clark*, 596 U.S. 36, 43–44 (2022) (quoting T. Cooley, Law of Torts 180 (1880) (Cooley)). The only evidence that supports Wyatt's assertion is Holmes's admission that he received "[m]aybe slightly more, but not much" more pay for working overtime. (ECF No. 30-1, at 3.) Even viewing this evidence in Wyatt's favor, Holmes still had good reason to believe that Wyatt violated Virginia's DUI law based on the open container found inside his vehicle, Sommerville's report of Wyatt's poor driving, Wyatt's poor performance on the field sobriety tests, his admission to drinking earlier in the day, and his changing stories. *See Thompson*, 596 U.S. at 43–44. Thus, Wyatt's malicious prosecution claim still fails.

standard protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

As noted, ample case law suggests that Holmes had probable cause to arrest Wyatt. *See supra* note 4. Wyatt, therefore, cannot overcome the "demanding standard" required to defeat Holmes's assertion of qualified immunity. *Wesby*, 583 U.S. at 63. Wyatt's Section 1983 claims accordingly cannot survive.

## IV. <u>CONCLUSION</u>

To prevail on any of his claims, Wyatt must establish that Holmes lacked probable cause to arrest him and to obtain an arrest warrant from the magistrate. Because the undisputed evidence shows that Holmes had probable cause, the Court will grant Holmes's motion for summary judgment. (ECF No. 26.)

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: __8__ October 2024  
Richmond, VA

/s/  
John A. Gibney, Jr.  
Senior United States District Judge

12